**CITATION**
(LONG ARM LSA R.S. 13:3201 et seq.)

RECEIVED
Office of the PMG

OCT 19 2017

JANET KENNEDY

VERSUS

POSTMASTER GENERAL

DOCKET NUMBER: 00120202C

23RD JUDICIAL DISTRICT COURT

PARISH OF ASCENSION

STATE OF LOUISIANA

SCANNED

**TO:     OFFICE OF FEDERAL OPERATIONS, DIRECTOR**
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)
P O BOX 77960
WASHINGTON, DC.   20013-8960

**YOU HAVE BEEN SUED.**

Attached to this citation is a certified copy of the petition*.   The
petition tells you what you are being sued for.

You must EITHER do what the petition asks in accordance with LAS R.S.
13:3201 et seq. OR you must file an answer or other legal pleading within
thirty (30) days in the office of the Clerk of this Court at the Courthouse
Building in Donaldsonville or Gonzales, Louisiana.

If you do not do what the petition asks, or if you do not file an
answer or legal pleading, a judgment may be entered against you without
further notice.

This service was ordered by Attorney PRO SE LITIGANT and was
issued by the Clerk of Court on the 13TH day of OCTOBER, 2017.

RECEIVED
NOV - 3 2017
LAW DEPARTMENT

_____
Deputy Clerk of Court for
Bridget Hanna, Clerk of Court

*************************************************************************
LEGAL ASSISTANCE IS ADVISABLE AND YOU SHOULD CONTACT A LAWYER IMMEDIATELY.
COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.
*************************************************************************

OCT 3 0 2017

EXHIBIT A

**CITATION**
(LONG ARM LSA R.S. 13:3201 et seq.)

JANET KENNEDY                                23RD JUDICIAL DISTRICT COURT

VERSUS                                       PARISH OF ASCENSION

POSTMASTER GENERAL                           STATE OF LOUISIANA

DOCKET NUMBER: 00120202C

**TO:  OFFICE OF FEDERAL OPERATIONS, DIRECTOR**
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)
P O BOX 77960
WASHINGTON, DC.  20013-8960

**YOU HAVE BEEN SUED.**

Attached to this citation is a certified copy of the petition*.  The petition tells you what you are being sued for.

You must EITHER do what the petition asks in accordance with LAS R.S. 13:3201 et seq. OR you must file an answer or other legal pleading within thirty (30) days in the office of the Clerk of this Court at the Courthouse Building in Donaldsonville or Gonzales, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading, a judgment may be entered against you without further notice.

This service was ordered by Attorney PRO SE LITIGANT and was issued by the Clerk of Court on the 13TH day of OCTOBER, 2017.

Deputy Clerk of Court for
Bridget Hanna  Clerk of Court

*************************************************************************
LEGAL ASSISTANCE IS ADVISABLE AND YOU SHOULD CONTACT A LAWYER IMMEDIATELY.
COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.
*************************************************************************

EXHIBIT A

**DIVISION C**

RECEIVED AND FILED
BRIDGET HANNA
CLERK OF COURT

2017 OCT 13  A 11:09    10/13/17

To Whom It May Concern. ~~June July~~ 120,202

D.P.Y. CLE... RECORDER
ASCENSION... LA.

My name is Janet Kennedy. Earlier this year I filed an EEOC action against my Postmaster, Alnita Williams. My complaint was for noncompliance of my disability and payment disputes regarding my FMLA account. It was denied.

My recourses were to appeal the decision to the same body, which would have resulted in the same outcome, I'm sure or file a civil action.

I am filing a civil action against Megan J. Brennan, Postmaster General of the U.S. It's my last chance at correction of this situation

Thank you

Janet Kennedy

Janet Kennedy
14372 Whispering Oaks Dr
Gonzales LA 70737
(225) 622 ~~4624~~ 4604

TRUE COPY
10/13/17

EXHIBIT A

RECEIVED AND FILED
  BRIDGET HANNA
· CLERK OF COURT
2017 OCT 13  A

**UNITED STATES POSTAL SERVICE**
**EQUAL EMPLOYMENT OPPORTUNITY CASE**
**IN THE MATTER OF:**

BY
D.T. Janet Kennedy
A Complainant

Agency Case No. 4G-700-0034-17

v.

Megan J. Brennan,
Postmaster General,
c/o Southern Area Operations
Respondent.

Formal Filed: March 20, 2017

## FINAL AGENCY DECISION

### Introduction

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110, this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claim

The complainant alleged discriminatory harassment[1] based on Retaliation (Current EEO activity) and Disability (OWCP)[2] when:

1. On January 21, 2017 she was not accommodated based on her medical restrictions;

2. On dates to be specified she has been denied FMLA paid leave; and

3. On dates to be specified, she has been short approximately 4.5 hours per week pay.

(Investigative File, Claims to be Investigated, page 1).

During the investigation, the complainant clarifies she is only claiming discrimination based on disability for claim 1 and retaliation for claims 2 and 3; therefore, this decision will analyze discrimination based on disability for claim 1 and retaliation for claims 2 and 3. (IF, Aff. A, pp. 4-5).

---

[1] Although the complaint was accepted as harassment claim, the harassment analysis does not apply since all the claims are discrete acts and will be addressed as discrete acts.

[2] In the complainant's affidavit, she clarifies her disability is based on her knee; therefore, in the remainder of this decision, the disability will reflect such clarification. (IF, Aff. A, p. 1).

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 2

Hereafter, references will be noted as follows: Investigative File (IF); Affidavit (Aff.); Exhibit (Exh.); Page/s (p/pp.).

## Chronology

This complaint was processed in accordance with the applicable Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R. §1614.103 et seq. An investigation was conducted, and a copy of the investigative report was transmitted to the complainant on June 6, 2017. Following the receipt of that report, the complainant had 30 days within which to request a hearing before an EEOC Administrative Judge (AJ) or a final agency decision without a hearing.

As the complainant failed to request either a hearing or a final agency decision without a hearing, this decision is being issued in accordance with 29 C.F.R. §1614.110 (b).

## Applicable Law

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. Downing v. U.S. Postal Service, EEOC Appeal No. 01822326 (September 19, 1983); Jennings v. U.S. Postal Service, EEOC Appeal No. 01932793 (April 13, 1994); and Saenz v. Department of the Navy, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she: (1) belongs to a protected group; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group. Hill v. Department of Veterans Affairs, EEOC Appeal No. 0120063979 (November 28, 2007); Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if

they remained unexplained. Day v. U.S. Postal Service, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983). *See also* Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). *See also* Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).

Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). The complainant always carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 4

The ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, *supra*, where the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable. *See also* Brewer v. U.S. Postal Service, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected group were treated more favorably. This is so, in part, because agencies are not monolithic entities. Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), *aff'd.* 814 F.2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965083 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); and Knapp-Huffman v. Department of Justice (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, *Id.*; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

For employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's. Curtin v. U.S. Postal Service, EEOC Appeal No. 01891910 (March 27, 1990); Briand v. U.S. Postal Service, EEOC

Appeal No. 01932677 (February 2, 1994); <u>Woody v. TVA</u>, EEOC Appeal No. 0120063987 (December 17, 2007).

## Person with a Disability

Discrimination based on disability and the failure to accommodate a qualified individual with a disability in connection with federal employment are prohibited by the Rehabilitation Act of 1973 (29 U.S.C. §791). The Rehabilitation Act Amendments of 1992 (P.L. 102-569, October 29, 1992) added a new Subsection (g) to 29 U.S.C. §791 making it clear that the same standards which apply to claims under the Americans With Disabilities Act are to be applied to Rehabilitation Act claims. On January 1, 2009, the ADA Amendments Act of 2008 (P.L. 110-325, September 25, 2008) became law, addressing what Congress viewed as unduly restrictive interpretations of the ADA by the courts and administrative bodies. Following its passage, courts have consistently held that the ADA Amendments Act should not be applied retroactively. *See* <u>EEOC v. Agro Distribution, LLC</u>, 555 F. 3d 462 (5th Cir. 2009) and <u>Lytes v. D.C. Water and Sewer Authority</u>, 572 F. 3d 936 (D.C. Cir. 2009). The EEOC promulgated regulations implementing the ADA Amendments Act on March 25, 2011.

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the applicable statutes and Equal Employment Opportunity Commission regulations. Title 42, United States Code, Section 12102(1) and 29 C.F.R. §1630.2(g)(1) define a person with a disability as an individual who: (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities (referred to elsewhere in the regulations as "actual disability"); (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. *See also* <u>Melahn v. Department of the Navy</u>, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual.

## Person with a Disability – Actual Disability

The definition of what constitutes a "physical or mental impairment" remains very broad. See 29 C.F.R. §1630(h)(1) and (2). According to the Americans With Disabilities Act (ADA), the Americans With Disabilities Act Amendments Act (ADAAA), and EEOC regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 42 U.S.C. §12102(2)(A) and 29 C.F.R. §1630.2(h)(2)(i)(1)(i). They also include standing, lifting, bending, reading, concentrating, thinking, communicating, and eating. The ADAAA also included within the definition of major life activity a category of major bodily functions which include functions of the immune system and normal cell growth, and respiratory, circulatory, endocrine, reproductive, digestive, neurological, brain, bowel, and bladder functions. 42 U.S.C. §12102(2)(B) and 29 C.F.R. §1630.2(h)(2)(i)1)(ii).

The ADAAA made it clear that Congress believed that the courts and the Equal Employment Opportunity Commission had been too narrow in their interpretations of the term "substantially limits" and instructed them to apply that term "…consistently with the findings and purposes of the ADA Amendments Act of 2008" and to construe the Act in favor of "broad coverage." See 42 U.S.C. §12101(a)(1) and (b)(1).  The Act and its implementing regulations create nine "Rules of Construction" to be applied to determine whether or not an impairment is substantially limiting.  42 U.S.C. §12102(4) and 29 C.F.R. §1630.2(j)(1).   Besides calling for broad and consistent coverage and an "individualized assessment", the rules provide that an impairment is disabling if it substantially limits an individual's ability to perform a major life activity in comparison to "most people in the general population."  In making this comparison, the regulations call for consideration of the difficulty, effort, or time required by the individual to perform the major life activity; the length of time the activity can be performed; the way in which the major life activity is affected by the impairment involved; and the non-ameliorative effects of mitigating measures such as the side effects of medication.  See 29 C.F.R. §1630.2(j)(4).  This regulation also makes clear that the focus should be on the effort required not the outcome that can be achieved by the individual with the impairment.

In addition, an impairment need only affect one major life activity to be substantially limiting; an impairment need not "significantly restrict" in order to be substantially limiting; and a determination concerning the application of the term should not require "extensive analysis" and not usually require scientific, medical, or statistical analysis.  The rules also state that episodic impairments or those in remission can be substantially limiting if they would be so when they are active and that even conditions which have less than a six-month duration could be substantially limiting.    Significantly, the Commission states in its regulations that the application of these rules of construction to certain medical conditions will "… in virtually all cases, result in a determination of coverage…" when assessing a possible "actual disability" (as distinguished from a "regarded as" disabled) situation.    See 29 C.F.R. §1630.2(j)(3), Predictable Assessments.

The ADAAA eliminated consideration of the ameliorative effects of mitigating measures when determining whether or not an impairment is substantially limiting except for consideration of ordinary eyeglasses or contact lenses intended to correct visual acuity or eliminate refractive error.  Mitigating measures include medication; medical supplies, equipment, or appliances; assistive technologies; low vision devices; hearing aids and implants; mobility devices; oxygen therapy equipment and supplies; prosthetics; and "reasonable accommodations or auxiliary aids or services", e.g. interpreters or readers or the modification of equipment.  See 42 U.S.C. §12102(4)(E) and §12103 and 29 C.F.R. §1630.2(j)(5) and (6).

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof. Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. U.S.

Postal Service, EEOC Appeal No. 01930854 (May 12, 1994) and Jenkins v. U.S. Postal Service, EEOC Appeal No. 01954572 (March 24, 1997). It is also not enough that the agency is in possession of a diagnosis; that an individual's supervisor knows that they have a particular condition; that the complainant has an approved claim with the Office of Workers Compensation Programs; or that the complainant has a percentage disability awarded by the Department of Veterans Affairs. Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and Bono v. U.S. Postal Service, EEOC Appeal No. 01951113 (August 11, 1997).

## Disability – Disparate Treatment

Courts have adopted and applied the Title VII burdens of proof to disability discrimination claims. See, for example, Norcross v. Sneed, 755 F.2d 113 (8th Cir. 1985) and Prewitt v. Postmaster General, 662 F.2d 292 (5th Cir. 1981). The Commission has also analyzed cases under this theory. Greathouse v. Department of the Army, EEOC Appeal No. 01984880 (May 2, 2001) and Oberg v. Secretary of the Navy, EEOC Request No. 05890451 (July 20, 1989).

In analyzing a disparate treatment claim under the Rehabilitation Act, the burden-shifting method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. See Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, 198 F.3d 68 (2nd Cir. 1999) and Swanks v. WMATA, 179 F.3d 929, 933-34 (D.C. Cir. 1999). Under this analysis, in order to establish a *prima facie* case, a complainant must demonstrate that he or she: (1) is an "individual with a disability"; (2) is "qualified" for the position held or desired; (3) was subjected to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Lawson v. CSX Transportation, Inc., 245 F.3d 916 (7th Cir. 2001).

## Disability – Accommodation

Assuming that a complainant has established that he or she is a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that he or she is "a qualified individual." 42 U.S.C. §12111(8). The regulations define a "qualified individual" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. §1630.2(m).

The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the

EXHIBIT A

function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. §1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual." Jasany v. Postmaster General, 755 F.2d 1244 (6th Cir. 1985). The complainant must also show that the agency was aware of the allegedly disabling condition and that a plausible accommodation can be made. Mikovich v. U.S. Postal Service, EEOC Appeal No. 01A11150 (June 20, 2002) and Lincovich v. U.S. Postal Service, EEOC Appeal No. 01810610 (August 9, 1982).

If it is determined that the complainant is unable to perform the essential functions of his or her position, the next inquiry is whether there is any reasonable accommodation by the employer which would enable him or her to perform those functions without constituting an undue hardship. The Commission's regulations provide examples of possible forms of accommodation and note that absent undue hardship, an employer is required to provide a reasonable accommodation to an otherwise qualified individual who is actually disabled (29 C.F.R. §1630.2(g)(i)(1)(i)) or has a "record of" a disability (29 C.F.R. §1630.2(g)(i)(1)(ii)); 29 C.F.R. 1630.2(o) and 1630.9(e)). See also White v. York International Corporation, 45 F.3d 357, 361-362 (10th Cir. 1995). The factors to be considered in determining whether an undue hardship exists are set out in the statute and regulations and include the nature and cost of the accommodation; the financial and other resources of the facility or the employer; and the type of operations in which the employer engages. 42 U.S.C. §12111(10) and 29 C.F.R. §1630.2(p).

An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his or her position. Conley v. U.S. Postal Service, EEOC Appeal No. 01984624 (July 6, 2001). The employer must be able to accommodate the individual without undue hardship. Brown v. Secretary of the Interior, EEOC Petition No. 03A00004 (May 22, 2002) and Hoang v. U.S. Postal Service, EEOC Appeal No. 01923725 (March 30, 1993). The employer is not required to accommodate an individual by eliminating the essential functions of his or her job or by creating a job not already existing within the organization, including a light duty position. Turco v. Hoechst Celanese Corporation, 101 F.3d 1090, 1093-1094 (5th Cir. 1996); Shiring v. Postmaster General, 90 F.3d 827, 831-832 (3rd Cir. 1996); and Watson v. Lithonia Lighting and National Service Industries, Inc., 304 F.3d 749 (7th Cir. 2002), cert. denied 123 S. Ct. 1286 (2003).

The Rehabilitation Act does not require an employer to lower or substantially modify standards to accommodate an individual or to take an action inconsistent with the contractual rights of others under a collective bargaining agreement. Jasany, 755 F.2d at 1250-1251; Foreman v. Babcock & Wilcox Company, 117 F.3d 800, 810 (5th Cir. 1997); Williams v. Widnall, 79 F.3d 1003 (10th Cir. 1996); and Hufford-Smith v. Department of Justice, EEOC Appeal No. 01995040 (February 13, 2002). In addition, a disabled worker is not entitled to the reasonable accommodation which he or she prefers and must show a connection between the disabling condition and the requested accommodation. Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996); Wiggins

v. U.S. Postal Service, EEOC Appeal No. 01953715 (April 22, 1997); and Metzenbaum
v. Office of Personnel Management, EEOC Appeal No. 01986974 (April 4, 2002).

An employer may accommodate an individual through reassignment. However, the
employer does not have to accommodate him or her by promoting him to a higher level
position or bumping another employee out of a job to create a vacancy. Shiring, 90
F.3d at 832 where the court held that the employee would have to establish that
"...there were vacant, funded positions whose essential duties [the employee] was
capable of performing, with or without reasonable accommodation, and that those
positions were at an equivalent level or position [as the position the employee
previously held]." Therefore, for the accommodation of reassignment to be reasonable,
a position must exist within the organization and be vacant, the employee must be
"otherwise qualified" to meet the criteria for this position, and the reassignment must not
offend the contract rights of others under the applicable collective bargaining
agreement. Foreman, 117 F.3d at 810.

## Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he
or she engaged in prior protected activity; (2) the agency official who took the adverse
employment action was aware of the protected activity; (3) he or she was subsequently
disadvantaged by an adverse employment action or adverse treatment; and (4) there is
a causal link between the protected activity and adverse action/treatment. Hochstadt v.
Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass
1976), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of
Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988); Coffman v. Department of
Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v.
Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). A
complainant may establish prior EEO activity by participating at any stage of the EEO
process or opposing unlawful discriminatory conduct. See, generally, Lewis v.
Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling
stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992)
(witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24,
1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, if it
was not explained, would reasonably give rise to an inference of reprisal. Shapiro v.
Social Security Administration, EEOC Request No. 05960403 (December 6, 1996).
Obviously, the complainant must offer evidence that the agency officials who took the
action were aware of his or her prior participation or opposition activity (Demeier v.
Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but
establishing that alone will not enable a complainant to establish the causal connection
element of a *prima facie* case. Garcia-Gannon v. Department of the Air Force, EEOC
Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate
employment actions, just adverse treatment based on a retaliatory motive, which could

EXHIBIT A

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
, Page 10

deter a reasonable person from engaging in protected activity.  Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006); Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999) and *EEOC Compliance Manual*, Section 8.D.3, Notice No. 915.003 (May 20, 1998).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action.  Clark County School District v. Breeden, 532 U.S. 286 (2001).  The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be·"very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation.  The Commission has followed suit and rendered decisions establishing much shorter time frames to establish the requisite temporal proximity.  See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003).

### Background

At all times relevant to the issue(s) in this complaint, the complainant was employed as a Sales and Service Distribution Associate at the Gonzales Post Office in Gonzales, LA. (IF, Exh. 1; Aff. A, p. 1).  The complainant has alleged that Postmaster Alnita Williams, and Supervisor of Customer Service Louise Dumas have engaged in discriminatory harassment against her because of Retaliation (Current EEO activity) and Disability (Knee) when:

1.    On January 21, 2017 she was not accommodated based on her medical restrictions;

2.    On dates to be specified she has been denied FMLA paid leave; and,

3.    On dates to be specified she has been short approximately 4.5 hours per week pay.

(IF, Issues to be Investigated, p. 1; Aff. A., pp. 2, 4-5).

#### Disability

The complainant testified she was originally diagnosed with her knee injury in December 2011 and averred all her supervisors and Postmasters were all aware of her injury and medical restriction.  (IF, Aff. A, p. 2). The complainant averred her work-

EXHIBIT A

related restrictions include standing for long periods of time and lifting more than ten pounds. *Id.*

The record included documentation of the complainant's medical diagnosis of a Left Knee injury and specific medical restrictions, requiring the use of a stool to work at the counter, lifting no more than 10 pounds, and standing no more than 1 to 3 hours per day. (IF, Exh. 7; Exh. 8).

## Retaliation

Although the record disclosed the complainant has engaged in one prior EEO activity, with a closing date of July 14, 2012, the complainant averred she is claiming retaliation based on discriminatory harassment due to her current EEO claim. (IF, Exh. 1, p. 2; Aff. A., p. 2). The complainant testified Postmaster Williams became aware of her instant EEO claim when she had to file a disclosure, about a week after she filed her EEO claim. The record reflects the complainant made initial EEO contact on January 24, 2017. (IF, Counselor's Report, pp. 1, 5-8).

## Claim 1: On January 21, 2017, she was not accommodated based on her medical restrictions

The complainant testified Postmaster Williams was the management official responsible for not accommodating her on January 21, 2017 by not allowing her to use a stool at the window, and she was threatened with disciplinary action if she did not continue with her work without accommodation. (IF, Aff. A, p. 2). The complainant averred she consistently requested accommodation, but has only recently been offered such accommodation. (IF, Aff. A, p. 3). The complainant declared she did not request to appear before the District Reasonable Accommodation Committee (DRAC) because she did not want more retaliation. (IF, Aff. A, p. 4).

## Claim 2: On dates to be specified, she has been denied FMLA paid leave

The complainant avowed she was denied FMLA [paid] leave on February 10, 2017, March 17, 2017, and March 31, 2017 by both Postmaster Williams and Supervisor Dumas. (IF, Aff. A, p. 4). According to the complainant, she was denied FMLA leave because it was inconvenient. *Id.*

The record indicated the complainant was charged .25 hours of Leave Without Pay in lieu of sick leave on February 10, 2017.[3] (IF, Exh. 12, p. 6). Further, the record demonstrated the complainant requested 4 hours of FMLA-protected sick leave for February 10, 2017, 4.5 hours for March 17, 2017, and 7 hours for March 31, 2017. The record indicates the leave was disapproved on both February 10, 2017 and March 17,

---

[3] The report of investigation does not include the complainant's Time and Attendance Collection system for March 17 and 31, 2017.

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 12

2017.   The Form 3971 for March 31 did not indicate whether it was approved or not.
(IF, Exh. 9; Exh. 10, pp. 1-3).

Claim 3: On dates to be specified she has been short approximately 4.5 hours per week
pay

The complainant testified she was short approximately 4.5 hours per week on the
following dates: pay period 3, weeks one and two; pay period 4, weeks one and two;
and pay period 5, week two.[4] (IF, Aff. A, p. 5).   The complainant identified both
Postmaster Williams and Supervisor Dumas as the management officials that denied
her pay. *Id.*

A review of the record indicated the complainant worked the following hours: Pay Period
3, week one 28.83 hours; Pay Period 3, week 2 33.39 hours; Pay Period 4, week 1
33.54 hours; Pay Period 4, week 2 31.62 hours; Pay Period 5, week 2 33.60 hours. (IF,
Exh. 12, pp. 1-12).

## *Prima Facie* Analysis

Disability-Accommodation

Person with a Disability

A complainant can prove that he or she is a "person with a disability" under the relevant
regulations by proving that he or she has an impairment that substantially limits an
individual's ability to perform a major life activity in comparison to "most people in the
general population." See 29 C.F.R. 1630.2(j)(4).   Whether an individual has a disability
is not based on the name or diagnosis of the impairment involved, but rather the effect
that the impairment has on the individual.

The complainant met the first prong of her *prima facie* case based on disability.   Here,
the complainant has provided medical documentation for a left knee injury and specific
medical restrictions. (IF, Exh. 7; Exh. 8).   Postmaster Williams testified that she was
*aware of the complainant's knee injury and was provided the CA-17 documentation,*
providing the complainant had various restrictions including: limitations of lifting,
standing, walking, bending, stooping, and twisting. (IF, Aff. B, pp. 1-2).   Supervisor
Dumas averred she was aware of the complainant's medical condition and received a
copy of her CA-17 providing the complainant's restrictions as follows: sitting, standing,
kneeling, bending, and stooping. (IF, Aff. C, pp. 1-2).

---

[4] Pay period 3/2017 corresponds to January 21 through February 2; pay period 3 corresponds to February 4 through
February 17; pay period 5 corresponds to February 18 through March 2, 2017.   (See Enclosures, 2017 postal
calendar).

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 13

Having established that she is an "individual with a disability", in order to establish a *prima facie* case of disability discrimination, the complainant must prove, by a preponderance of the evidence, that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of him. *See* Sisson v. Helms, 751 F.2d 991, 992-3 (9th Cir. 1985), *cert. denied*, 474 U.S. 846 (1985).

The next element of a *prima facie* case based on a failure to accommodate the complainant was "qualified" for the position held or desired. Lawson v. CSX Transportation, Inc., 245 F.3d 916 (7th Cir. 2001). The regulations define a "qualified individual" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the complaint holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering her own health and safety or that of others. 29 C.F.R. §1630.2(m).

The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. §1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual." Jasany v. Postmaster General, 755 F.2d 1244 (6th Cir. 1985). The complainant must also show that the agency was aware of the allegedly disabling condition and that a plausible accommodation can be made. Mikovich v. U.S. Postal Service, EEOC Appeal No. 01A11150 (June 20, 2002) and Lincovich v. U.S. Postal Service, EEOC Appeal No. 01810610 (August 9, 1982).

As a Sales and Service Distribution Associate, the basic functions the complainant was expected to perform included: perform any variety of sales and customer services at a retail window; provide sales and customer service; provide variety product and service information; and handle and process customer purchases and returns. (IF, Exh. 11, pp. 1-2). Supervisor Dumas testified the complainant is expected to work the customer service window, and on Saturdays throws flats, letter and works the window. (IF, Aff. C, p. 2). The complainant acknowledged she was unable to perform all the duties of her job, specifically she was unable to stand for long periods of time and lift over 10 pounds. Postmaster Williams averred the complainant is unable to perform her work assignment, as she is unable to lift, stand, walk, bend, stoop or twist. (IF, Aff. B, p. 2). Therefore, the complainant was not a qualified individual.

Where, as here, it is shown the complainant was unable to perform the essential functions of her position, the next inquiry is whether there is any plausible reasonable accommodation by the employer, which would enable her to perform those functions without constituting an undue hardship to the employer.

The Commission's regulations provide examples of possible forms of accommodation and note that absent undue hardship, an employer is required to provide a reasonable

EXHIBIT A

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 14

accommodation to an otherwise qualified individual who is actually disabled (29 C.F.R. §1630.2(g)(i)(1)(i)) or, in limited circumstances, who has a "record of" a disability (29 C.F.R. §1630.2(g)(i)(1)(ii)); 29 C.F.R. 1630.2(o) and 1630.9(e)). See also White v. York International Corporation, 45 F.3d 357, 361-362 (10th Cir. 1995). The factors to be considered in determining whether an undue hardship exists are set out in the statute and regulations and include the nature and cost of the accommodation; the financial and other resources of the facility or the employer; and the type of operations in which the employer engages. 42 U.S.C. §12111(10) and 29 C.F.R. §1630.2(p).

An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his/her position. Conley v. U.S. Postal Service, EEOC Appeal No. 01984624 (July 6, 2001). Not only must the employer be able to accommodate the individual without undue hardship—(See Brown v. Secretary of the Interior, EEOC Petition No. 03A00004 (May 22, 2002) and Hoang v. U.S. Postal Service, EEOC Appeal No. 01923725 (March 30, 1993)—but the employer is not required to accommodate an individual by eliminating the essential functions of his job or by creating a job not already existing within the organization, including a light duty position. Turco v. Hoechst Celanese Corporation, 101 F.3d 1090, 1093-1094 (5th Cir. 1996); Shiring v. Postmaster General, 90 F.3d 827, 831-832 (3rd Cir. 1996); and Watson v. Lithonia Lighting and National Service Industries, Inc., 304 F.3d 749 (7th Cir. 2002), cert. denied 123 S. Ct. 1286 (2003). The Rehabilitation Act also does not require an employer to lower or substantially modify standards to accommodate an individual, or to take an action inconsistent with the contractual rights of others under a collective bargaining agreement. Jasany, 755 F.2d at 1250-1251; Foreman v. Babcock & Wilcox Company, 117 F.3d 800, 810 (5th Cir. 1997); Williams v. Widnall, 79 F.3d 1003 (10th Cir. 1996); and Hufford-Smith v. Department of Justice, EEOC Appeal No. 01995040 (February 13, 2002).

Next, in order to establish a *prima facie* case of disability discrimination for failure to accommodate, the complainant must prove, by a preponderance of the evidence, that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of her. See Session v. Helms, 751 F.2d 991, 992-3 (9th Cir. 1985), cert. denied, 474 U.S. 846 (1985).

The complainant requested a stool to work at the window. (IF, Aff. A, p. 2). Noteworthy is that the complainant provided documentation—a Form CA-17—which requested from management to allow the complainant to use a stool as an accommodation; however, the Form CA-17 was dated April 24, 2017, which was approximately 3 months after the January 21, 2017 incident date. (IF, Exh. 7). A review of the record indicated the complainant submitted prior Forms CA-17 and other medical documentation, specifically covering the time period of this claim, which did not include a request for a stool, although it included restrictions in the complainant's ability to lift, stand or sit. (IF, Counselor's Report, pp. 11, 14). Postmaster Williams asserted the complainant had twice fallen off a stool, causing her harm. (IF, Aff. B, pp. 2-3). It is noted the

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 15

complainant disputed that she had fallen off a stool twice. She maintained the first time she tripped over a tub of mail and the second time she was injured due to a malfunctioning of the stool. (IF, Post Investigation, June 13, 2017 email from the complainant). Postmaster Williams contended the stool limits the complainant's ability to perform her duties and presents a safety hazard. It is not in dispute the complainant was injured in an incident with a stool, although the opinions regarding the circumstances in which that occurred differed. However, examination of the record evidence revealed that management had accommodated the complainant's standing restriction. The Dispute Resolution Specialist indicated that Postmaster Williams stated the complainant was accommodated in that, if she needed to leave the window to break the standing limitation, it could be done. (IF, Counselor's Report, p. 3).

An agency is not required to provide complainant with the accommodation of complainant's choice, as it may choose between possible accommodations as long as it is effective. *See* 29 C.F.R. Part 1630; *EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities at p 17 Act (10/17/02).* The record shows the agency accommodated the complainant's restrictions, although it was not the accommodation of her choice.
Disability-Disparate Treatment

In order to establish a *prima facie* case based on disability, the complainant must demonstrate that he or she: (1) is an "individual with a disability"; (2) is "qualified" for the position held or desired; (3) was subjected to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Lawson v. CSX Transportation, Inc., 245 F.3d 916 (7th Cir. 2001).

As discussed below, the complainant established the first element in that she is a person with a disability. The failed to meet the second element, as she is not a qualified individual with a disability. She also failed to meet the third element, as she did not prove, by preponderant evidence that the agency failed to accommodate her condition.

Finally, for the fourth element of the complainant's *prima facie* case of disability discrimination, the complainant must prove that the circumstances surrounding the adverse action gave rise to an inference of discrimination. The complainant has not met this element.

The complainant identified JoAnn Stephens as an individual, who was treated more favorably then her, as she was allowed to sit on a stool. (IF, Aff. A, p. 9). Ms. Stephens is a Sales and Service Distribution Associate at the Gonzales Post Office in Gonzales, LA. (IF, Exh. 1; Exh. 2, pp. 1, 3). However, Postmaster Williams testified Ms. Stephens was not treated more favorable. (IF, Aff. B, p. 3). In addition, the complainant did not prove, and there is no evidence in the record from which to conclude the complainant and the comparator had the same medical restrictions. In addition, the complainant did not prove or allege that Ms. Stephens' medical documentation failed to request a stool as an accommodation, which the complainant's did. Moreover, Postmaster Williams

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 16

testified the complainant was injured while using a stool and he had safety concerns. There is no evidence Ms. Stephens was injured while using a stool.

The complainant stated she did not believe that her medical condition was a factor in claims 2 and 3, did not identify any comparators for claims 2 and 3 in terms of disability discrimination. (IF, Aff. A, pp. 3-4, 6).

As set forth above, the complainant did not meet the second, third and fourth elements of her *prima facie* case of disability discrimination. As a result, her claim of disability discrimination fails.

Retaliation

The Complainant may establish a *prima facie* case of retaliation by showing: (1) she engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt, *supra*.

The first element the Complainant's *prima facie* case has been met for both claims 2 and 3. The record disclosed the Complainant has engaged in prior EEO activity, which was closed on July 14, 2012 (IF, Exh. 1, p. 2).

For the second element, the complainant has failed to prove management was aware of her prior EEO activity, and there is no evidence in the record indicating management was aware of the complainant's past EEO activity. However, the complainant averred her discrimination complaint was based on the current claim. Postmaster Williams testified she was aware the complainant's current EEO activity when she was contacted by an EEO specialist. (IF, Aff. B, p. 2). The Complainant testified management became aware of the current EEO claim approximately a week after she filed the instant complaint on January 24, 2017. (IF, Aff. A, p. 2; Counselor's Report, p. 1). Since Postmaster Williams testified she was aware the complainant's current EEO activity when she was contacted by an EEO specialist and both claims 2 and 3 happened at least one week after the complainant filed her claim, in the light most favorable to the complainant, it will be assumed Postmaster Williams was aware of the complainant's current EEO claim when claims 2 and 3 occurred. (IF, Aff. B, p. 2). As the complainant initiated EEO contact in the instant complaint on January 24, 2017 and the incident which formed the basis for Claim 1 occurred on January 21, 2017; therefore, she did not meet the first element for Claim 1.

As for Supervisor Dumas, she testified she was unaware of the complainant's current EEO activity, and there is nothing in the record that disputes her testimony. Therefore, the complainant has failed to meet the second element of her *prima facie* case as it pertains to Supervisor Dumas, who was the management official named in Claim 3.

For the third element, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 761 (1998). But the Supreme Court has held that in examining retaliation cases, adverse treatment is to be considered a broader category of management conduct than adverse employment actions. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). Under this broader standard, the matters raised in all claims, if proven, would cross the threshold into adverse treatment and will be discussed below.

The complainant has met the third element of her *prima facie* case for both claims 2 and 3, as she was denied paid FMLA and her pay was short. For claim 2, the complainant was denied paid leave on both February 10, 2017 and March 17, 2017. (IF, Exh. 9; Exh. 10, pp. 1-3). Supervisor Dumas testified the complainant received sick leave on March 31, 2017. (IF, Aff. C, p. 2). The complainant did not dispute this assertion. For claim 3, Supervisor Dumas testified the short in pay were her errors. (IF, Aff. C, p. 3).

Turning to the fourth element of the complainant's *prima facie* case, it must be determined whether there is a causal link between the complainant's protected activity and the adverse treatment. The complainant has not provided, and the investigation did not uncover, any direct evidence that management made any decision or took any action toward her based on the complainant's current EEO activity.

For claim 2, as noted above, there is no indication in the record that Supervisor Dumas was aware of the current EEO claim prior to the alleged incidents; thus, any incident involving Supervisor Dumas fails.

Therefore, only the denial of the complainant's paid leave request for February 10, 2017, which was denied by Postmaster Williams, would survive.

For claim 3, only Supervisor Dumas was involved with the error in the complainant's pay being short. Since there is no evidence in the record that Supervisor Dumas was aware of the complainant's current EEO activity, there can be no causal link. It is axiomatic that if the complainant cannot establish that the responsible management official was aware of her prior or current EEO activity, she cannot establish a causal connection between her complaint and any EEO activity. Therefore, the complainant failed to meet the fourth element of her *prima facie* case for claim 3.

Based on the foregoing, the Complainant has established a *prima facie* case of retaliation in Claim 2, but only pertaining to the denial of paid leave on February 10, 2017.

Although a complainant can make a *prima facie* case of retaliation based on evidence of disparate treatment (i.e., that she was treated less favorably than a similarly situated individual who refrained from engaging in EEO activity), no such showing has been

made here. The complainant did not name any comparators for claims 2 and 3. Comparator Stephens was discussed in the disability analysis above.

## Management's Non-Discriminatory Reason

Assuming, but only for the sake of argument, that the complainant has established a *prima facie* case of discrimination based on disability and retaliation, management has articulated a legitimate, non-discriminatory explanation for their actions.

For claim 1, as noted above, Postmaster Williams testified the complainant was injured when she had fell off a stool, and that allowing the complainant to use the stool limits the complainant's ability to perform her duties and creates a safety hazard. (IF, Aff. B, pp. 2-3).

For claim 2, Postmaster Williams testified she was not aware whether she was involved in denying the complainant FMLA leave; however, if she was, it was likely because the complainant failed to provide proper documentation. (IF, Aff. B, p. 4). To support her assertion, the record indicated the complainant was denied paid [FMLA] leave on February 10, 2017, because she failed to provide acceptable documentation. The complainant's medical documentation is annotated that pay was denied because it was not on letter head. (IF, Exh. 9). The complainant could have corrected this issue by resubmitting documentation with a letterhead. Postmaster Williams also testified that the complainant would schedule her appointments on Friday afternoons, which "would leave the office in a bind" and for that reason she was asked to schedule her appointments on another day. (IF, Aff. B, p. 4).

Supervisor Dumas averred she denied the complainant's paid [FMLA] leave on March 17, 2017 because of needs of service. (IF, Aff. C, p. 2). Further, Supervisor Dumas provided she did pay the complainant sick leave for March 31, 2017. *Id.*

For claim 3, Supervisor Dumas admitted she made an error with the complainant's Time and Attendance Collection System, and she explained the error to the complainant. (IF, Aff. C, pp. 3-4). He testified that neither the complainant's EEO activity nor her medical condition were factors in this matter. *Id.* at p. 3.

Based on the evidence in the record, management has established their non-discriminatory reason(s) for their actions. This analysis will now address whether there is evidence of pretext.

## Pretext

At this point, the complainant has the burden of proving that management's stated reason is not only pretext, but is pretext for intentional discrimination. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1129 (7th Cir. 1997).

The complainant provided no evidence as to why her disability was a factor in any of her claims. As for retaliation, the complainant provided no suitable comparators and again no evidence to support her assertion that retaliation was a factor in any action by management. (IF, Aff. A, pp. 4-6). In contrast, all of the management officials provided reasonable, non-discriminatory reasons for their actions and unequivocally denied that the complainant's medical conditions or EEO activity were factors in any of their conduct. Therefore, the complainant has failed to prove that she was subjected to an adverse employment action.

The complainant's allegations are not supported by the totality of the record and she has failed to present any plausible evidence that would demonstrate that management's reasons for its actions were factually baseless or not its actual motivation. Tincher v. Wal-Mart Stores, Inc. and Morgan v. Hilti, Inc., Id. A complainant's subjective beliefs cannot be probative evidence of pretext and, therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), cert. denied, 467 U.S. 1215, (1984); see also, Billet v. CIGNA Corp., 940 F.2d 812, 816 (3rd Cir. 1991).   The complainant cannot second-guess the wisdom of the agency's business decisions. Thus, agencies are free to discharge, promote, demote, or transfer individuals for any reason, fair or unfair, so long as the decision is not a pretext for discrimination. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

In other words, there was nothing that showed by a preponderance of the evidence that the legitimate explanations given by the agency were pretext for discrimination. Hammons v. HUD, EEOC Request No. 05971093 (March 5, 1999).   Hence, the complainant has not shown that the agency's explanation for its action is a pretext for discrimination.

## Conclusion

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318 (D.Mass 1976), aff'd 545 F.2d 222 (1st Cir. 1976) (applying to reprisal cases); and Prewitt v. U.S. Postal Service, 662 F.2d 292 (5th Cir. 1981) (applying to cases brought under the Rehabilitation Act); the evidence does not support a finding that the complainant was subjected to discrimination as alleged. Consequently, this complaint is now closed with a finding of no discrimination. Consequently, this complaint is now closed with a finding of no discrimination.

## Appeal Rights

### APPEAL TO EEOC

Final Agency Decision
Janet Kennedy
Agency Case Number 4G-700-0034-17
Page 20

The complainant has the right to appeal the Postal Service's final decision to the:

**Director,**
**Office of Federal Operations**
**Equal Employment Opportunity Commission (EEOC)**
**P.O. Box 77960**
**Washington, DC 20013-8960**

**within 30 calendar days of receipt of this decision.** The complainant must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with the appeal. The complainant may also deliver the appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with the appeal, the complainant must submit proof to the EEOC that a copy of the appeal and any supporting documentation and/or brief were also submitted to the:

**NEEOISO – FAD**
**National EEO Investigative Services Office**
**USPS**
**P. O. Box 21979**
**Tampa, FL 33622-1979**

The complainant is advised that if the complainant files an appeal beyond the 30-day period set forth in the Commission's regulations, the complainant should provide an explanation as to why the appeal should be accepted despite its untimeliness. If the complainant cannot explain why the untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

**RIGHT TO FILE A CIVIL ACTION**

Alternatively, if the complainant is dissatisfied with the Postal Service's decision in this case, the complainant may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If the complainant chooses to file a civil action, that action should be styled **Janet Kennedy v. Megan J. Brennan, Postmaster General**. The complainant may also request the court to appoint an attorney for the complainant and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. The application must be filed within the same 90-day time period for filing the civil action.

EXHIBIT A



EXHIBIT A

J. Kennedy
14372 Whispering Oaks Dr
Gonzales LA 70737

CERTIFIED MAIL

7017 1000 0000 8284 9784



Postmaster General, of US
475 L'Enfant Plaza SW
Washington, DC
20260-

OCT 19 2017